Manly, J.
 

 The case of the defendant has been duly considered, in this Court, upon the exceptions taken below, and also upon a motion in arrest of judgment, made here. We discover no reason for reversing or arresting the judgment of the law upon the verdict.
 

 
 *490
 
 Tbe evidence of the vending of other copies of the book than that to Bowman, was properly admitted. We suppose that a copy might be delivered from one person to another, in North Carolina, under such circumstances as to divest it of criminality, as when it is delivered, not approvingly and/or the purpose of propagating its principles, but to gratify curiosity, both parties to the act being equally opposed to the design. The criminality consists in the intent, and this must be collected from the circumstances. Where thd question is whether the defendant was justified by the occasion, or acted from malice, every circumstance is admissible which can elucidate the transaction, and enable the jury correctly to conclude whether the defendant acted fairly and honestly, or vindictively, for the purpose of causing evil consequences. Hpon this principle,, in an action for a libel, contained in a weekly paper, evidence was allowed to be given of the date of other papers, with the same title, at the same office, for the purpose of showing that the papers were sold deliberately, and in the regular course of transmission for public perusal, and, therefore, if libellous, distributed
 
 mala fide; Plunkett
 
 v. Cobbett, 5 Rep. 136. The evidence ,was admissible then, to show the intent of the -defendant, in delivering the book to Bowman.
 

 We think it admissible in another point of view : the indictment, in the second count, charges the circulation to consist in delivering a copy to a single individual.
 

 The correctness of this would depend upon whether the act alleged, was intended to aid in giving publicity to- the principles of the book, and, pertinent to this enquii’y is the proof in question. The vending of other copies of the work, affects the defendant with a knowledge that it was a work consisting of divers copies in a course of transmission to the public ; every act, therefore, of the defendant, putting out a copy of such a work, is an aiding in the circulation. The evidence was, therefore, admissible, to explain the act of defendant in delivering a copy of the book to Bowman ; that is, to establish it as an act of circulation. In both views the principle is the
 
 *491
 
 same — the evidence being proper, to show the wicked intent.
 

 The next “¡exception presented by record, is one based upon the language of the law, under which, the defendant is indicted ; Eev. Code, ch. 34, sec. 16. It will be seen, by reference to the section, that the incendiary publication prohibited, is designated as any written or printed
 
 pamphlet or paper,
 
 and it is objected, that the proof is, as to the circulation of a
 
 hoole,
 
 which is neither a pamphlet or a paper. ' The distinction between books and pamphlets, is not very definitely marked, in the popular use of the terms, but we suppose there is some legal distinction, for we find in the 82 section of the same chapter of Code, that both books and pamphlets are spoken of. The distinction is that, perhaps, which is made by the case between a parcel of sheets, stitched and bound, and a sheet or parcel left unbound. But whatever may be the distinction, we are
 
 of
 
 opinion that the term paper, which is added in the statute, is used in a comprehensive sense,- — -is intended to enlarge the purview of the statute, and to embrace all written or printed matter, whether in dignity it rise above or fall below the class called pamphlets. No qualifying phrase is pre-fixed to, or accompanies the term, and it is certainly sufficiently broad to- embrace a book, as well as a pamphlet and other minor' publications. A book is obviously within the mischief intended to be guarded against, and we must suppose it was intended to be included in the general term used. The Court was correct, therefore, in holding that a bound volume was within the prohibitions of the law.
 

 The Court was also correct, in ruling the delivery to Bowman, with the wicked intent described by the statute, was a circulation within the meaning of the law.. Upon this subject, we have already said what is deemed sufficient, in disposing of the exception to the evidence.
 

 It is not deemed necessary, as we conceive, that a party should put out, and then remove from hand to hand, incendiary matter, in order to make him guilty of circulating; nor is it necessary he should put out distinct copies to different individuals. Where a work is printed for public perusal, every
 
 *492
 
 one who delivers a copy, in furtherance of the design of publishing, is an actol* in the work of publication, and, in the case of incendiary matter, forbidden by law, is guilty as a principal : provided, it be done wilfully and with the evil intent.
 

 The remaining exception, is to that part of the instruction to the jury, which declares that it was not necessary, in order to constitute the offence, that the sale should be to a slave or a free negro, nor that the matter should be read in the presence of either. ¥e find no error in this. There is no such qualification of the offence, in the language of the statute, as that which is here supposed. It is made, by the Code, unlawful to circulate, or aid in circulating, written or printed matter, the evident tendency of which is to cause slaves to be discontented and free negroes dissatisfied. No liceuse is given to circulate, amongst any class, by restricting the prohibitory provision to some particular ones. The circulation, within the State, is alike prohibited, whether it be amongst whites or blacks. The Legislature seems to have assumed, that if a circulation, within the State, was once established, that its corrupting influence would inevitably reach the black. The enemies to our peace act upon this assumption, and it is not unreasonable to ascribe to our Legislative Assembly the same amount of foresight.
 

 It is clear to us, that in a mixed population, consisting of both whites and blacks, matter put into circulation, calculated to excite insubordination amongst the latter, would, ultimately, extend itself to them, and effect the object it was calculated to accomplish. Thus the inevitable tendency of a circulation, in whatever circle, would be to make blacks discontented. The language of the law, in regard to this point, is unrestricted. The spirit of the law can only be accomplished by giving it an unrestricted construction, and where both the letter and the spirit concur, there can be no doubtfulness as to the duty of the Court.
 

 The motion in arrest of judgment, raises the inquiry, whether the matter extracted from the hook and collated in the evidence, be, in law, within the prohibition of the statute, “ the
 
 *493
 
 evident tendency whereof, is to canse slaves to become discontented with the bondage in which they are held by their masters, and the laws regulating the same ; and free negroes to be dissatisfied with their social condition, and the denial to them of political privileges, and thereby to excite among the said slaves and free negroes, a disposition to make conspiracies, insurrections or resistance against the peace and quiet of the public.” We have considered this'matter too, and do not regard it as admitting of any serious question. Without going into a detailed consideration of the offensive matter, it is sufficient to say, the expressed object of the book, as disclosed by the extracts, is to render the social condition of the South odious, and to put an end to that which is held up as the odious feature, by force, and arms, if necessary. This object is constantly kept in view by the execution of the work, and the considerations resorted to, are manifestly designed to accomplish the object. The scope of the extracts, is to place slave holders and their slaves in antagonism and hostile array, and thus, by force, to bring about an extinction of slavery.
 

 We do not perceive how there" can be any difficulty in discovering the tendency of matter, every passage of which is a declaration, in the most inflamatory words, that the slave ought to be discontented with his condition, and the master deposed from his, and that the change should be effected, even at the cost of blood. The language, in direct terms, recommends the accomplishment of the object as a duty, and argues in favor of its rectitude. It would seem to follow, somewhat after the manner of a collatory, that the tendency is in accordance with the object and argument.
 

 We conclude, the evident tendency is that which is attributed to it in the indictment; that it is against law, and is a mischievous attempt to disturb the happiness and repose of the country.
 

 We have considered the case only upon one of the counts, in the indictment, viz : that which charges the circulation to be by delivering a copy to George W. Bowman. Holding that to be good, under a general verdict, it will be unnecessa
 
 *494
 
 ry to consider the others, as there may be judgment upon that count.
 

 Let this opinion be certified to the Superior Court of Guilford, to the end that said Court may proceed to judgment according to law.
 

 Per Curiam,
 

 Judgment affirmed.